UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILMA PENNINGTON-THURMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-cv-00699-SRW |
| DENNIS M. JENKERSON, et al., | ) ) ) |
| Defendants. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the application of self-represented plaintiff Wilma Pennington-Thurman to proceed in the district court without prepaying fees and costs. The Court will grant the application. Additionally, for the following reasons, the Court will dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted.

**Legal Standard on Initial Review**

A complaint filed in forma pauperis by a non-prisoner is subject to pre-service review pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Carter v. Schafer*, 273 Fed. Appx. 581 (8th Cir. 2008) (stating that "contrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service"). To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal

conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

**The Complaint**

Plaintiff brings this civil complaint under 42 U.S.C. § 1983 against defendants Dennis M. Jenkerson (Chief, St. Louis Fire Department), Unknown Erb (Captain, St. Louis Fire Department), Robert J. Tracy (Police Chief, St. Louis City Police Department), and an unknown St. Louis City police officer. She alleges her Fourth and Fourteenth Amendment rights were violated when firefighters knocked down her door mistakenly while responding to a welfare check on her neighbor and, separately, when a police officer shot a fleeing suspect and damaged her window with a bullet. She sues defendants only in their official capacities.

> (1) *Allegations Against Chief Jenkerson and Captain Erb of the St. Louis Fire Department*

On the morning of May 5, 2023, plaintiff's neighbor called 911 seeking a welfare check on her husband. The neighbor was not at home when she called, and had been unable to get ahold of her husband. He had complained of chest pains the day prior, and she was concerned when he did not answer the phone.

The St. Louis City Fire Department responded to the welfare check at 3864-A Shenandoah Avenue. There is one house at 3864 Shenandoah Avenue, divided into two apartments—3864 and 3864-A. The door for 3864 is in the front of the house; the door for 3864-A is in the back of the house. Plaintiff lives in front at 3864 Shenandoah Avenue. Her neighbor who made the 911 call lives in back, at 3864-A. When firefighters arrived at 3864-A, they knocked on the door and the caller's husband answered. He told the firefighters that he was fine and he had not called 911. He did not know who had dialed 911.

Finding no emergency at 3864-A, the firefighters decided to go around to the front of the house and knock on the door to 3864. This was plaintiff's apartment, and she was asleep. She did not answer the door. Fearing a medical emergency, dispatch gave Captain Erb the go-ahead to break down plaintiff's door. Plaintiff awoke to firefighters in her home. As she recalls it:

> On May 5, 2023, before 8:00 AM Wilma Pennington-Thurman, Plaintiff, was awakened by a drilling noise at her apartment, address 3864 Shenandoah Ave, St. Louis, Missouri 63110. She thought it was City Workers doing something to the street and wondered why they were working so early. She said it was not even 8 o'clock and closed her eyes. The noise got louder. She sat straight up in the bed and said, "They're coming through your door[.]" With her heart beating fast she grabbed her robe, and house phone to dial 911 and [her] taser. She started screaming "Who's in my house?" She could hear voices by now in her living room. She screamed again[,] "[W]ho's in my house?" A voice hollered back, "Fire Department. Did you call the Fire Department?" She screamed "NO[.]" She could hear the man's voice saying, "Wrong house." Ms. Pennington-Thurman (Plaintiff) came out [of] the bedroom and looked at the front doorway. The frame around the door was gone. The woodwork between the door and window was cracked in half and lying on the floor. Wood pieces were lying on the floor. The doorknob was all scratched up.

(Doc. 1-1 at 1-2).

Plaintiff states that she is a 70-year-old woman, a two-time cancer survivor, and has a heart condition. "She did not need the excitement and trauma of someone breaking into her home

while she slept." (Doc. 1-1 at 3). For weeks afterward, she could not sleep well. Eventually, her doctor prescribed her sleeping pills.

    *(2)    Allegations Against the Chief Tracy and an Unknown Officer of the St. Louis City Police Department*

In an unrelated claim against Chief Tracy of the St. Louis City Police Department and an unknown officer, plaintiff states that on the morning of Saturday, September 30, 2023, a police officer from the City of St. Louis was chasing a fleeing suspect down her street. "While in the back [of her apartment], in the bathroom fixing her hair she heard pow, pow, pow and pow!" Plaintiff recognized the sound of gunshots. Looking outside, she saw police officers surrounding a man lying on the sidewalk in front of her neighbor's house. Other officers ran to the scene. Eventually an ambulance arrived and paramedics transported the man to the hospital.

Plaintiff states that she felt like she needed to leave her home so she walked to church. As she walked outside, officers asked for her information. She asked an officer if any bullets hit her building. Then she turned and saw a bullet hole in her front window, directly in front of where she sits to watch TV.

Plaintiff states that this incident contributed to the anxiety and sleeplessness that she first experienced four months prior when the fire department entered her home while she was sleeping. For relief, plaintiff seeks an unspecified amount of damages. She asks the Court to order defendants to "take affirmative steps as may be necessary to restore, as nearly as practicable, plaintiff to the position she would have been in but for the incompetent behavior." (Compl. at 6). She also wants defendants to take unspecified actions, possibly training, to prevent a recurrence of these incidents.

**Discussion**

Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights arising out of these two incidents, one involving the fire department and one involving the police department. The Court will address these allegations as to each defendant.

(1)   *Fire Captain Erb (May 5, 2023 Incident)*

The Fourth Amendment guarantees the right of people to be secure in their houses against unreasonable searches and seizures. *See* U.S. Const. amend. IV. The "Fourth Amendment restrictions are almost wholly alien to [a] situation, where paramedics are subject to a distinct set of professional standards and goals aimed at responding to medical emergencies." *Buckley v. Hennepin Cty*, 9 F.4th 757, 761-62 (8th Cir. 2021) (quoting *Thompson v. Cope*, 900 F.3d 414 (7th Cir. 2018)).

In the familiar context of a police search in a criminal action, entering the wrong house on a valid warrant violates the Fourth Amendment if the circumstances would alert a reasonable officer to "the risk that they might be" in the wrong place. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987). However, "where the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate, there is not federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence alleged in the instant case." *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 221 (6th Cir. 2007).

Unlike cases applying the Fourth Amendment to officers mistakenly executing search warrants at the wrong house, this case involves officers entering the wrong house to render aid during a medical emergency. Case law applying Fourth and Fourteenth Amendment standards to paramedics is in short supply. In most available cases, the paramedics are granted qualified

immunity because the law is not well-established in this area. *See, e.g.*, *Thompson*, 900 F.3d at 417 (reversing denial of qualified immunity on Fourth Amendment claim against paramedic because "[c]ase law did not (and does not) clearly establish that a paramedic can violate a patient-arrestee's Fourth Amendment right by exercising medical judgment to administer a sedative in a medical emergency.")

But unlike many cases involving the Fourth Amendment in the context of medical emergencies, here, plaintiff was not restrained or seized in any manner. *See, e.g.*, *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 761 (8th Cir. 2021) (finding excessive force in context of paramedics' decision to sedate plaintiff without her consent when responding to a call for welfare check was not objectively unreasonable and not excessive force); *Thompson v. Cope*, 900 F.3d 414, 422-23 (7th Cir. 2018) (examining Fourth Amendment in context of a paramedic treating a patient in a medical emergency); *see also Perez v. City of Fresno*, 98 F.4th 919, 928-29 (9th Cir. 2024) ("As the district court noted, there are few cases applying Fourth and Fourteenth Amendment standards to paramedics responding to medical emergencies. And we have not found, nor have Plaintiffs cited, any Supreme Court or Ninth Circuit precedent establishing constitutional liability under similar circumstances.").

In plaintiff's case, the firemen were facing a presumed medical emergency. Immediately after discovering their mistake, they left the premises. The Court has found no case applying the Fourth Amendment to a scenario in which a home was mistakenly entered by paramedics or firefighters in response to a medical emergency. The firefighters did not use any force upon plaintiff, and certainly not excessive force. The firefighters never seized or restrained plaintiff. Although the firefighters used force on plaintiff's door, they used no force on plaintiff. For these reasons, to the extent the Fourth Amendment might apply to plaintiff's situation, the Court finds

that that no Fourth Amendment violation occurred. Plaintiff has not stated a plausible claim that Captain Erb violated her Fourth Amendment rights to be free of excessive force, unlawful seizure, or unlawful restraint, and her claims against Captain Erb will be dismissed.[1]

Additionally, plaintiff names Captain Erb in his official capacity only. Naming a government official in his official capacity is the equivalent of naming the government entity that employs him. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). In this case, plaintiff identifies the defendants as St. Louis Fire Department employees, or municipal employees. However, fire departments are not entities that can be sued under § 1983, and the complaint contains no allegations that sufficiently state a plausible municipal liability claim. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992); *see also Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978). Therefore, for this additional reason, plaintiff's claims against Captain Erb will be dismissed for failure to state a claim upon which relief may be granted.

(2)     *Fire Chief Jenkerson (May 5, 2024 Incident)*

Plaintiff has not alleged that Chief Jenkerson was involved with the events of May 5, 2023. She does not allege that he was on duty, on the scene, or even aware of the 911 call.

To the extent plaintiff alleges § 1983 liability against Jenkerson for failure to train or supervise his officers, this claim is subject to dismissal. As discussed above, plaintiff has not plausibly pled the firefighters violated the Constitution. "Without a showing that the deputies violated the Constitution . . . there can be no liability for failure to train." *Carpenter v. Gage*, 686

---

[1] It may be that plaintiff could file a state law negligence or property claim against defendants, but the complaint here is based on the Fourth and Fourteenth Amendments. As prior courts have found, a tort committed by a state actor is not necessarily a constitutional violation. *See Peete*, 486 F.3d at 222 (citing *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986)).

F.3d 644, 651 (8th Cir. 2012). Because the Court has found that plaintiff has not alleged a plausible claim against the firefighters for violation of her Fourth and Fourteenth Amendment rights, her claims against Jenkerson for unlawful failure to train or supervise will be dismissed.

*(3) Unknown Police Officer (September 20, 2023 Incident)*

Plaintiff alleges that on September 20, 2023, an unknown police officer shot at a fleeing suspect and a stray bullet damaged her window. She seems to allege both that (1) this act violated her right to be free of excessive force; and (2) that the City of St. Louis is liable for the officer's unlawful acts because of an official policy, custom, or failure to train or supervise.

First, the Court finds that plaintiff has not stated a plausible claim that the officer's conduct violated her right to be free of unlawful force. The officer did not use any force against plaintiff, much less unlawful force. If anything, he used unlawful force against the fleeing suspect. But plaintiff does not have standing to argue a claim that unlawful force was used against another person. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

As to whether the City of St. Louis can be liable for the officer's conduct, plaintiff must allege an official policy, custom, or a failure to train caused the unconstitutional act. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Because the Court finds plaintiff cannot state a plausible claim that the officer committed an unconstitutional act, however, there can be no liability on the part of the City of St. Louis. Again, the Eighth Circuit has found that "without a showing that the deputies violated the Constitution . . . there can be no liability for failure to train." *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012). That is, there has been no constitutional violation, and therefore the City's policies, customs, and training are not at issue.

For these reasons, plaintiff's claims under the Fourth and Fourteenth Amendment against the unknown officer of the City of St. Louis Police Department will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

*(4) Police Chief Robert J. Tracy (September 20, 2023 Incident)*

Like plaintiff's allegations against Chief Jenkerson of the St. Louis Fire Department, her allegations against Chief Tracy of the St. Louis Police Department are subject to dismissal. First, plaintiff has not alleged that Chief Tracy caused any injury to her. She has not alleged he was present during the shooting or even during the subsequent investigation. "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution").

To the extent plaintiff alleges Chief Tracy was liable for a failure to train or supervise, she has not alleged a plausible claim. As discussed above, plaintiff has not shown that the unknown officer committed any unconstitutional act toward her. *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012). Again, there can be no liability on the part of the City of St. Louis if there is no underlying constitutional violation. *Id.*

For these reasons, the Court will dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff's complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(A).

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED as moot**. [ECF No. 3]

**IT IS FURTHER ORDERED** that plaintiff's letter to the Court dated October 7, 2024, which the Court construes as a motion to retract consent to Magistrate Judge is **DENIED as moot**. [ECF No. 6]

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 22nd day of October, 2024.

                        HENRY EDWARD AUTREY
                        UNITED STATES DISTRICT JUDGE